**Application of William H. SCOTT, Jr., for Admission to the Bar.**

**Misc. No. 74–H–5.**

United States District Court,
S. D. Texas,
Houston Division.

Aug. 7, 1974.

William F. Walsh, Houston, Tex., for applicant.

James R. Gough, Asst. U. S. Atty., Houston, Tex., amicus curiae.

## MEMORANDUM OPINION

NOEL, District Judge.

In June of 1962 the applicant, William H. Scott, Jr., and another were tried on a grand jury indictment charging a violation of 18 U.S.C. § 1001. A mistrial was declared due to the inability of the jury to agree upon a verdict. In September of 1962 a retrial of the same charge again resulted in a mistrial. In April of 1963 a third trial, held before this Judge, ended in a verdict of guilty. The applicant's conviction was reversed by the United States Court of Appeals for the Fifth Circuit. The case was set to be retried in June of 1965.

It appears that on May 27, 1965 the applicant conferred in chambers with the Chief Judge of this District, the Honorable Ben C. Connally. By a letter dated May 27, 1965 and filed May 28, 1965 the applicant surrendered and renounced his license to practice before this Court. On May 28, 1965 the charges against the applicant were dismissed. On that same day, Chief Judge Connally prepared a "Memorandum to File" which read:

This is result of request of the Court, by reason of disclosures made in the several trials in U. S. v. Scott & Peterson, Cr. No. 14342.

While Scott indicated that he would like to reapply for admission several years hence, no committal has been made to him as to what action the Court would take on any application he might make.

Thus matters stood until August 18, 1972, when Mr. Scott applied for re-admission to practice before this Court. The application was routinely forwarded to the Committee on Admissions and Grievances established by Rule 1 of the Local Rules of this Court. On August 28, 1972 the Chairman of the Committee contacted the Court through its Clerk seeking "the file . . . that led to the previous withdrawal of his [Scott's] right to practice. . . ."

Chief Judge Connally responded to this letter on August 31, 1972, saying:

. . . I have discussed the matter of Scott's application with the other Judges at a meeting a few days ago. Those present were unanimously of the view that the reapplication should not be favorably considered.[1] Apparently no action was taken by the Committee immediately.

In January of 1973 the applicant's counsel requested the Committee Chairman to hold a hearing on the application. Notified of this, Chief Judge Connally agreed that a hearing was in order and that Judge Hannay, who for many years had been and still is responsible for admissions to practice before this Court, would conduct the hearing. The applicant petitioned the Court of Appeals to mandamus this Court but failed on May 28, 1974. On May 31, 1974 Judge Hannay recused himself because he would be a material witness.[2] Chief Judge Connally, perhaps being of the opinion that he was a material witness as to the circumstances surrounding the applicant's resignation, recused himself and assigned this Judge to preside over the matter.

Two separate questions have been raised by the applicant which, in different ways, concern the propriety of this Judge hearing this matter. The first question involves the procedure by which this matter was assigned; the second concerns the possible disqualification of this Judge for interest.

A. In his Memorandum of Law Regarding Disqualification of Judges, applicant takes the position, "that Chief Judge Connally has disqualified himself from participating in any 'other proceeding' in this matter, because he, through counsel, has repeatedly admitted that he is a material witness and this, we contend, includes the appointment of a successor to Judge Hannay. . . ." Without an expression of opinion as to what the Chief Judge has or has not said or admitted, the adjudicatory authority of this Judge and that of this multi-Judge Court over this matter will now be clarified.

The "other proceeding" language quoted above appears to be a reference to 28 U.S.C. § 455[3] which provides for

---

1. In this letter Chief Judge Connally also noted, "I believe Judge Hannay had an experience since [Mr. Scott's trials] which he felt reflected adversely on Mr. Scott's situation."

2. Cf. note 1, supra.

3. The Court notes that the "other proceeding" language of Section 455 on its face applies only to disqualifications for relation or connection and not to disqualifications for being a material witness. But this technical reading is not a sufficient reason to avoid

the voluntary disqualification of a Judge for interest.[4] "Interest" in the sense here used is discussed under B, below.

██ Chief Judge Connally's recusal clearly could not by itself be an impediment to his assigning this case to another Judge of this District. Stringer v. United States, 233 F.2d 947, 16 Alaska 305 (9th Cir. 1956) rejected the contention, identical with the applicant's, "that a trial judge after disqualifying himself cannot with propriety carry on the mechanical duties of transferring the case to another judge or other essential ministerial duties short of adjudication." See also In re Fox West Coast Theatres, 25 F.Supp. 250 (S.D.Cal.1936), affd. 88 F.2d 212 (9th Cir.) cert. denied, 301 U. S. 710, 57 S.Ct. 944, 81 L.Ed. 1363 (1937). When following the almost mechanical administrative procedures called for in 28 U.S.C. § 137 and outlined in Rule 9(B) of the Local Rules of this Court, Chief Judge Connally performed ministerial duties, not adjudicatory duties. He did not "sit on . . . [an] other proceeding" in this matter.

B. The second question raised by the applicant concerns the propriety under 28 U.S.C. § 455 of this Judge presiding because of his own interest.

The interest of which applicant complains allegedly arose from this Judge's participation[5] in the conference of Judges mentioned in Chief Judge Connally's letter of August 31, 1972 discussed above. The applicant also complains of the fact that this Judge presided over one of his criminal trials. This second complaint regarding interest is strengthened, it is argued, by the recommendation of the Committee on Admissions and Grievances that this matter be resolved by "one of the judges of this Court not having had previous connection with the proceedings leading up to the indictment [of Mr. Scott] or with the trials growing out of the same . . . . ."[6]

Title 28 U.S.C. § 455 provides that a Judge shall disqualify himself in any case in which he:

1) has a substantial interest;

2) has been of counsel;

3) is or has been a material witness; or

4) is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal or other proceeding therein.

For the purposes of this memorandum, it will be assumed that the matter now before the Court is a case in the sense that term is used in the statute, although it could reasonably be argued that the instant proceeding is not such a case.

Under this statute, "substantial interest" has been interpreted to mean marked personal feeling, Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L. Ed. 767 (1925); financial or beneficial interest, Kinnear-Weed Corp. v. Humble Oil & Refining Co., 324 F.Supp. 1371 (S.D.Tex.1969) (Connally, C. J.), affd. 441 F.2d 631 (5th Cir. 1971); or "the interest that any lawyer has in pushing his case to a successful conclusion." Adams v. United States, 302 F. 2d 307 (5th Cir. 1962). Applicant has not suggested that this Judge has any stake in this case growing out of emo-

---

resolving the underlying issue of the propriety of this Judge's presiding over this case upon the direction of Chief Judge Connally.

4. Section 455 provides for a determination of disqualification only by the judge affected. However, the peculiar posture of this case would seem to allow this Judge to pass on the question of its authority to proceed without contradicting the statutory scheme.

5. While there is no "proof" of this writer's actual attendance *vel non* at the particular meeting in question, the applicant has been instructed to proceed on the assumption that this Judge was in attendance. For the purposes of this memorandum it is deemed that this Judge was present.

6. This recommendation was contained in a Report of the Committee which was undated.

tion, monetary interest or professional zeal. Neither is the "of counsel" disqualification involved.

Disqualification for being a "material witness" is similarly uncalled for. There is no suggestion that this Judge has information or testimony which he might be called upon to give. Borgia v. United States, 78 F.2d 550 (9th Cir.), cert. denied, 296 U.S. 615, 56 S.Ct. 135, 80 L.Ed. 436 (1935). Not surprisingly, there has been no indication that this Judge might or will be called as a witness. United States v. Re, 372 F.2d 641 (2nd Cir.), cert. denied 388 U.S. 912, 87 S.Ct. 2112, 18 L.Ed.2d 1352 (1967). In any event, any testimony this Judge might give concerning the matter is as well or better known to other Judges of this Court.

Disqualification by reason of being "related to or connected with any party or his attorney" [7] may result from familial relationship, In re Eatonton Electric Company, 120 F. 1010 (S.D.Ga. 1903); social connection, Weiss v. Hunna, 312 F.2d 711 (2nd Cir.), cert. denied, 374 U.S. 853, 83 S.Ct. 1920, 10 L.Ed.2d 1073, reh. denied 375 U.S. 874, 84 S.Ct. 37, 11 L.Ed.2d 104 (1963); business involvement, United States Fidelity & Guaranty Company v. Lawrenson, 34 F.R.D. 121 (D.Md.) affd. 334 F.2d 464 (4th Cir.), cert. denied, 379 U.S. 869, 85 S.Ct. 141, 13 L.Ed.2d 71 (1964); employment, Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154, memorandum of Mr. Justice Rehnquist, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972); and the like. But no such relation or connection has been or could be alleged to exist between this Judge and any party or attorney in this matter.

Thus, strictly speaking, Section 455 is *inapplicable here. But, in order to avoid even the appearance of impropriety, this* Judge will look beyond the letter of the statute. The Fifth Circuit has observed that, "A prior knowledge of the facts or a prior interest in an issue arising out of them may be a ground for disqualification." Roberson v. United States, 249 F.2d 737, 741 (5th Cir.), cert. denied, 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715 (1958). The application of this suggestion from *Roberson* will be appraised.

Whatever "prior knowledge of the facts" which this Judge may have, came to him in the regular course of his duties as a Judge. Any facts learned by this Judge in the course of prior criminal trials are matters of public record. With all due respect, the recommendation of the Committee on Admissions and Grievances regarding Judges with a prior participation in this matter is not accepted.

The Fifth Circuit has held that the legitimate receipt of information concerning a criminal defendant by a Judge does not render him incompetent to try the defendant. Smith v. United States, 360 F.2d 590 (5th Cir. 1966). This rule should be applied in a situation such as this.[8] Mr. Justice Rehnquist recently observed the truism, "that a federal judge has a duty to *sit* where *not disqualified* which is equally as strong as the duty to *not sit* where *disqualified.*" Laird v. Tatum, supra, 409 U.S. at 837, 93 S.Ct. at 15. See also Edwards v. United States, 334 F.2d 360, 362 n. 2 (5th Cir. 1964). It applies here.

As noted above, the applicant has called into question the propriety of the discussion of Mr. Scott's application at the weekly conference of the Judges of the Houston Division of this Court. If the applicant's characterization of this meeting of the Judges as a "private, preprandial, extra-judicial conference," were true or accepted, he conceivably

---

7. This is the only ground for disqualification under Section 455 which is wholly discretionary with the judge. Cf. Note, Justice Rehnquist's Decision to Participate in Laird v. Tatum, 73 Columbia L.Rev. 196 (1973).

8. The intimation in Webster v. United States, 330 F.Supp. 1080, 1086 (E.D.Va. 1971) regarding suggestions of recusal is not to the contrary, for there a presentence investigation report—not a public record—was involved.

could prevail on his motion. But this characterization is incorrect and inapposite.

It is true that the conferences complained of are held in Chambers, not in the open courtroom. In that sense, they are private. Except under unusual circumstances, they are held near the noon-hour on each Thursday. Following the conferences, the Judges customarily share lunch. In that sense, they are preprandial. But the business of the Court is the purpose of the weekly meetings.

When appropriate, these meetings are attended by other interested persons. But they are not "extra-judicial" in the sense applicant implies. Many and varied matters require the continuing and regular attention of a multi-judge, metropolitan United States District Court such as this. The admission of attorneys to practice before this Court—by which is meant the Court as an entity rather than any particular Judge of the Court—is only one such matter.

■ The power to govern the practice before it is inherent in every court. Feldman v. State Board of Law Examiners, 438 F.2d 699, 702 (8th Cir. 1971). Because this inherent power lies in a court as such and not in any individual Judge of a court, it may from time to time be necessary, as here, for the members of a court to confer in private and deliberate. There is nothing irregular or untoward in the means this Court has chosen to bring its collective mind to bear on questions which require the attention of all of the Judges. Indeed, in view of the limited power of the Chief Judge, there are a limited number of matters which finally can be acted upon without the approval of all the Judges concerned.

Other means, including the delegation of authority to a particular Judge to preside over particular matters, have been and will be used to exercise the powers of this Court. This manifests nothing beyond the fact that, within reasonable and fair limits, the discretion of all of the Judges constituting the Court must be employed to meet the demands of different, even unique circumstances.

It bears emphasizing that the motion presented seeks disqualification under 28 U.S.C. § 455 for *interest* and not for *bias* under 28 U.S.C. § 144. United States v. Hoffa, 247 F.Supp. 692, 699 (E.D.Tenn.1965), affd. 376 F.2d 1020 (6th Cir. 1967), cert. denied, 389 U.S. 859, 88 S.Ct. 102, 19 L.Ed.2d 124 (1967), declined to allow a party to advance under Section 455 grounds for disqualification which he properly should have presented under Section 144. The Congressionally mandated distinction between interest and bias is not an idle one. Section 144 requires that an affidavit and a certificate of counsel be presented and that only one such affidavit be allowed in any case. If a party were free to convert an allegation of mental attitude constituting bias into an allegation of interest, Section 144 and the limits on allegations of bias it contains would be effectively written out of the law. Roberson v. United States, supra, cannot be read to even suggest that this statutory scheme should not be fully respected.

■ These principles yield a straight-forward conclusion. Even if this Judge had "prior knowledge of the facts" of this case based on its initial consideration by the Court as a whole, which is deemed to be the case here, no valid ground for disqualification has been presented by applicant's motion. In the last analysis, a contrary conclusion would be no different than saying that a Judge who held a preliminary hearing in a case could not sit on the trial of that case, or that a Judge who tried a case could not rule on a motion for a new trial or a motion for rehearing.

For the foregoing reasons, applicant's motion for this Judge to disqualify himself from sitting in this matter is De-

nied. This denial is without prejudice to the applicant's right to file a motion pursuant to 28 U.S.C. § 144 within the appropriate time interval.