James MOODY, Trustee of the Estate of Jeannette Corporation, and the Committee of Unsecured Creditors of Jeannette Corporation,

and

Robert J. Cindrich, Esquire, Mansmann Cindrich & Titus, Douglas A. Campbell, Esquire, and Campbell & Levine, Petitioners,

v.

The Honorable Paul A. SIMMONS, United States District Judge for the Western District of Pennsylvania, Nominal Respondent,

and

Security Pacific Business Credit, Inc., the Coca Cola Bottling Company of New York, Inc., KNY Development Corporation, J. Corp., John P. Brogan, John J. Brogan, Hanley Dawson, Jr., Hanley Dawson, III, James A. McLean, James R. Winoker, Robert M. Janowiak, Interdyne, Inc., Muench–Kreuzer, Candle Company, Calvin McCracken and Frank W. Storey,

and

Jeannette Corporation t/a Jeannette Glass, John Polojac and American Flint Glass Workers Union of North America, Local No. 535, Respondents.

No. 88–5249.

United States Court of Appeals, Third Circuit.

Sept. 26, 1988.

Rehearing and Rehearing In Banc Denied Oct. 20, 1988.

Robert L. Potter, Strassburger McKenna Gutnick & Potter, Pittsburgh, Pa., Michael J. Sweeney, Sidley & Austin, Chicago, Ill., David J. Armstrong, Dickie McCamey & Chilcote, P.C., Philip E. Beard, Stonecipher, Cunningham, Beard & Schmitt, H. Woodruff Turner, Kirkpatrick & Lockhart, Robert O. Lampl, David J. Humphreys, Humphreys & Nubani, P.C., David B. Mulvihill, Paul H. Titus, Mansmann, Cindrich & Titus, Stanley E. Levine, Campbell & Levine, Pittsburgh, Pa., Jay Topkis, Paul Weiss Rifkind Wharton & Garrison, New York City, for petitioners.

Mark A. Berthiaume, Goldstein & Manello, Boston, Mass., Grace S. Harris, Pittsburgh, Pa., for respondents.

Before BECKER, HUTCHINSON and COWEN, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This opinion addresses a mandamus petition filed in the terminal stages of a protracted bankruptcy case. The case was before the district court, the reference to the bankruptcy court having been withdrawn. The petition arises from discomfiting circumstances, for it requests that the assigned district judge be ordered to vacate various comments and fact findings that impugned the integrity of counsel for the Bankruptcy Trustee. The petition also requests that we vacate all of the actions of the district judge (including the statements) that followed his announcement that he intended to recuse himself from the case after he had entered an order converting the bankruptcy proceedings from Chapter 11 to Chapter 7. Neither the actual recusal, which was ultimately effected, nor the conversion order is the subject of an appeal, and it is not contended that the mandamus petition is a surrogate therefor.

█ Unfortunately, although no one is challenging the substance of the conversion order, we will be obliged to vacate it and also all other orders entered after the date of the judge's recusal declaration, made at a hearing on January 29, 1988. Deferring to the judge's own repeated acknowledgements at the hearing that his impartiality could reasonably be questioned, we conclude that the judge should have recused at that time and that he was not empowered to perform judicial actions thereafter. We find no basis on this record for the judge's conclusion that his impartiality could be questioned only *after* he entered the conversion order, and with respect to proceedings to follow. Moreover, even though a recused judge can enter "housekeeping" orders until a successor judge is assigned, the orders entered here—the conversion order, orders disqualifying counsel and set-

ting aside a fee agreement—and the challenged fact findings, were clearly not of a "housekeeping" variety. The petition for mandamus will therefore be granted.

## I. PROCEDURAL HISTORY

The bankruptcy case commenced on October 4, 1982, when an involuntary bankruptcy petition was filed against Jeannette Corporation in the Bankruptcy Court for the Western District of Pennsylvania, pursuant to Chapter 7 of the Bankruptcy Code. On December 10, 1982, on motion of the debtor, the bankruptcy proceeding was converted from Chapter 7 to Chapter 11. Four and a half years later, on February 2, 1987, John Polojac and the American Flint Glass Workers Union of North America, Local No. 535, creditors of the bankrupt debtor, moved to reconvert the proceeding from Chapter 11 to Chapter 7. On March 10, 1987, the District Court for the Western District of Pennsylvania entered an order withdrawing the reference from the Bankruptcy Court.

On December 17, 1987, counsel for the Bankruptcy Trustee wrote the district judge stating that the Trustee took no position on the reconversion issue. Later, in an undated motion, the Trustee advocated extending the claims bar date in lieu of converting the proceeding from Chapter 11 to Chapter 7.

Although no formal recusal motion was ever filed, several days prior to January 29, 1988, the date on which the hearing on the Chapter 7 conversion motion was to be held, the district judge received another letter from counsel for the Trustee, this time suggesting that the judge might have a conflict of interest in the case because the judge's daughter worked for Mellon Bank, one of Jeannette Corporation's 882 unsecured trade creditors.

At the very outset of the January 29 hearing the judge brought this letter to the fore, reading significant portions of it into the record including the following:

> The Court may be unaware of the fact that Mellon Bank has a claim in Jeannette's bankruptcy case of $338,622.26, making it the second largest of the unsecured creditors. Prominent in the class of unsecured creditors, Mellon's interests will likely conflict with those of the Pension Benefit Guaranty Corporation and the former hourly employees.

He then commented extensively on the recusal issue, adverting at one point to "ethical considerations," and ultimately announced his intention to recuse himself from the case because of the potential Mellon Bank conflict. He repeated that this was his intention on some seven occasions during the course of the hearing.[1]

Furthermore, during the hearing it was brought to the judge's attention that there might be a conflict arising from a personal injury action that the judge and his wife had recently filed in the Court of Common Pleas of Allegheny County, Pennsylvania. Two of the defendants in this (bankruptcy) case are represented by the same law firm that is representing a defendant in the personal injury action. Furthermore, another defendant in the personal injury suit is represented by a law firm in which the wife of an attorney for the trustee is employed.[2] Upon hearing this, the judge stated "I ought to get out of this case." [Petitioners' Exhibit E, at 148–49]

Notwithstanding his repeated declarations about the necessity for recusal,[3] the

---

1. During his discourse, the judge stated, inter alia:
   > systematically, as a matter of fact, the Clerk is put on notice any litigation involved with Mellon Bank, I don't take that litigation. I mean, it's never assigned to me. However, this was never brought to my attention until this letter came to me on the nineteenth of January.
   
   Petitioners' Exhibit E, at 13.

2. That attorney, who was involved in an acrimonious exchange with the judge, is one of the petitioners for mandamus relief.

3. For example, at one point the judge stated:
   > I think I've got to recuse myself. Not because I want to, but because I think I'm constrained to do it under these circumstances. And I would rather have, I would rather have a fresh judge look at it.
   
   Petitioners' Exhibit E, at 204. The judge added:
   > And I certainly think that it's a possibility that somebody could contend later on that I should have recused myself.
   
   Petitioners' Exhibit E, at 205.

judge decided that he would recuse himself only *after* he had acted on the conversion petition. He explained

> what I am going to do today won't have anything to do with any matter which bears on Mellon Bank or any interest that they might have. And I assure all of you that if and when this case—well, after I conclude what I am going to do today, and another judge gets it, and the case goes to trial, of course, I won't be sitting and there won't be anything— anything I do today won't in any way impact on any interest that Mellon Bank might have in this litigation ...

> I am going, as I indicated, after I finish these housekeeping matters, I think I should get out of the case. But at this point, after putting all the time and effort in it over all these years, and after, in my opinion, I bring to your attention a methodology and a way of solving the problems that have caused this case to come to a standstill, I think that I would be remiss in my duty if I had bowed out of the case and thrust this upon another judge who would have to spend hours, and hours, and hours in research and study in order to do what I believe should be done.

During the balance of the hearing the judge made a number of allegations seriously reflecting on the integrity of Robert A. Cindrich, Esq., and Douglas A. Campbell, Esq., who were representing the trustee. Inter alia, the judge accused counsel of "trying to rip off this estate in millions of dollars" [Petitioners' Exhibit E, at 122] and stated that they had "connived" to have Jeannette Corporation's bankruptcy case converted from a Chapter 7 to a Chapter 11 for their own personal benefit, *i.e.*, so they could "muscle in" on a large contingent fee.

Toward the end of the hearing, counsel for certain defendants requested that the judge reconsider his earlier decision to recuse himself. [Petitioners' Exhibit E, at 201–203]. However, noting that Mellon Bank's claim against Jeannette Corporation was "substantial" and that his daughter is a member of Mellon Bank's credit review committee which reviews "these types of loans," the judge reiterated his position that recusal was necessary in order to avoid the appearance of impropriety. He added that he was doing so, because "[t]here have been a lot of acid type remarks made here, too." Thus, the January 29, 1988 hearing, which is said to have consumed six and one-half hours, concluded the same way it had begun—with the judge stating his intention to recuse himself from the case.

On March 15, 1988, noting that an opinion would be filed with the clerk within fifteen days, the district court judge entered an order which provides, *inter alia:*

1. That the Bankruptcy Case shall be converted from a Chapter 11 to a Chapter 7;

2. That the Creditors' Committee shall be removed as a plaintiff in the District Court Action;

3. That the contingent fee order signed by Bankruptcy Judge Gibson shall be vacated *ab initio;*

4. That the law firms of Campbell & Levine and Mansmann Cindrich & Titus shall be removed as attorneys in the District Court Action (both because of the conversion to Chapter 7 and for reasons to be disclosed in an Opinion to be filed within 15 days);

5. That it is recommended "very reluctantly" that said law firms be retained to conduct the "fraudulent conveyance" litigation on an hourly fee basis, although no such fees shall be paid until said litigation has been concluded;

6. That every attorney and law firm of record in the Bankruptcy Case and/or the District Court Action shall within 60 days file a "minute and fully itemized accounting statement of all moneys received" from the Debtor's estate and/or "any client represented in all of these cases or related cases ...;" and

7. That the Trustee shall likewise file such a statement for himself and for his accounting firm.

The March 15 Order was accompanied by 48 pages of "findings of fact," many of which, congruent with the judge's earlier

remarks, are highly critical of Trustee's counsel.

The Judge distributed his (March 15) Findings of Fact, Conclusion of Law and Order during a proceeding in his courtroom on March 16, 1988, at which a number of newspaper reporters were present, apparently having been notified of the proceeding by the judge's secretary. The judge spoke on the record for more than an hour, explaining his order. Messrs. Cindrich and Campbell, supported by affidavits from persons present at the hearing, contend that the courtroom session turned out to be a press conference. The judge, through various affidavits, denies that he held a press conference.

On March 29, 1988, the judge filed an "Opinion in Support of and in Explanation of the Findings of Fact, Conclusions of Law and Order." 85 B.R. 319. In that opinion the district judge set forth "four separate and distinct reasons" why the bankruptcy proceeding should be converted from Chapter 11 to Chapter 7. The first three reasons were the traditional reasons for a conversion order: (1) the continuing diminution of the debtor's assets and the consequent improbability of the debtor's rehabilitation; (2) the lack of feasibility of the Trustee's reorganization plan; and (3) the inevitable delay which would result from allowing the proceeding to continue under Chapter 11. The fourth reason for the conversion was what the district judge termed the "bad faith unethical" conduct of the Trustee and the attorneys for the Trustee. Over half of the sixty-page opinion is devoted to this reason. Excerpts from the judge's opinion were reprinted in the Pittsburgh newspapers.

On the same day, Mr. Cindrich and the law firm of Mansmann, Cindrich and Titus, and Mr. Campbell and the law firm of Campbell and Levine (collectively "petitioners") filed with this court a petition for writs of mandamus and prohibition. The petition requested that we order the district judge: (1) to vacate all orders entered after January 29, 1988 in the proceedings pending before the district judge in the bankruptcy case; (2) to vacate all findings impugning counsel entered during the proceedings; (3) to return the files in the case to the Clerk of the United States District Court for the Western District of Pennsylvania for reassignment to a different member of the court; and (4) to refrain from entering any further orders or findings in the case. On the next day, March 30, the district judge entered an order recusing himself from further proceedings in the bankruptcy case.

On April 14, 1988, petitioners filed a supplemental and modified petition for writ of mandamus, reiterating the first two requests for relief presented in the original petition. The petitioners deleted the third and fourth requests for relief, which had been rendered moot by the entry of the district judge's recusal order. On April 25, 1988, the district judge filed a 75–page answer to the petition accompanied by a two-volume appendix and two volumes of exhibits to the appendix. The judge, in opposition to the petition, reiterated much of what he had said in his March 29 opinion.

On May 9, 1988, we ordered all parties opposing the relief requested by petitioners to file an answer to the mandamus petition. On May 16, 1988, the district judge filed a second answer to the petition. On May 17, 1988, John Polojac and the American Flint Glass Workers Union, Local No. 535, also filed an answer supporting the district judge's conversion of the bankruptcy proceeding.

## II.

The threshold question before us is whether the district judge's actions after his January 29 announcement of its intention to recuse must be set aside.[4] This

4. In a cover letter to 17 exhibits and other miscellaneous materials sent to Chief Justice Rehnquist, the district judge has suggested that the members of this panel (and the entire United States Court of Appeals for the Third Circuit) might wish to consider recusal from consideration of the instant petition in light of the fact that our colleague, Judge Carol Los Mansmann, is the spouse of one of the named partners in one of the petitioning law firms. We do not

question is governed by 28 U.S.C. § 455 which provides, in pertinent part:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

...(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest[5] in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

...iii. Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding.

28 U.S.C. § 455 (1982).[6]

We ordinarily review recusal decisions for abuse of discretion. We first look to § 455(b), which provides that a judge is automatically recused upon the existence of certain familial and/or financial relationships,[7] and then to the more general terms of § 455(a).

It would appear that the automatic recusal provisions do not apply in this case. The district judge's daughter, a credit analyst for Mellon Bank, is not a minor child residing in the judge's household, and at all events, she does not have a financial interest as defined in the statute or an automatically disqualifying non-financial interest.[8]

■ Under § 455(a) a recusal is required when a reasonable person would harbor doubts about the judge's impartiality. *United States v. Sciarra*, 851 F.2d 621, 634 (3d Cir.1988), *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3d Cir.1987). However, in terms of § 455(a), this case has an unconventional twist. Here, the judge himself repeatedly stated that he should recuse himself from the case, and eventually did so. Appellate courts will be most deferential to the finding of a trial judge that there is an appearance of impropriety in his continuing to sit on a case. In practical terms, even when, objectively, § 455(a) is not met, an appellate court will be extremely reluctant to second guess a judge whose heightened sensitivity to even a remote or speculative appearance of impropriety impells him or her to recuse.

That principle applies here. Although we express no opinion as to whether the

---

believe that our impartiality may reasonably be questioned for entertaining this petition under these circumstances, and we would decline to recuse ourselves from ruling on the petition for writ of mandamus even had the recusal issue been properly raised under Federal Rule of Appellate Procedure 27.

5. Financial interest is defined in § 455(d)(4) of the statute to mean "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party."

6. The other subsections of § 455 are not relevant. We note also that the American Bar Association Code of Judicial Conduct, consistent with § 455, prescribes that a judge "should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where ... (c) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest." A.B.A. Code of Judicial Conduct, Canon 3C(1)(c) (1986) (emphasis added).

7. Section 455(b) has been construed to require recusal if a judge, the judge's spouse, or minor

children residing with the judge possess a *financial* interest in the subject matter of or are parties to a controversy, no matter how small the interest and regardless of whether the outcome of the proceeding could have a substantial effect upon it. If the judge, the judge's spouse, or someone within the third degree of relationship to one or both of them possesses any *nonfinancial* interest in the case, recusal will be required only if that interest could be substantially affected by the outcome of the proceeding. *In re New Mexico Natural Gas Antitrust Litigation*, 620 F.2d 794, 796 (10th Cir.1980).

8. *See also* Internal Operating Procedures for the Third Circuit Chapter 11.B.1.(d)(vi):

Ownership of a small percentage of the outstanding shares of a publicly traded corporation that is listed as a creditor of the bankrupt who is a party to the lawsuit is not a "financial interest" in the subject matter in controversy or in a party to the proceeding unless the judge has an interest that can be substantially affected by the outcome of the proceeding[.]

law requires that the judge recuse himself, the judge here clearly found that the appearance of impartiality could be compromised by reason of his daughter's employment at Mellon Bank and by his lawsuit in state court defended by counsel before him in the bankruptcy case. We will defer to that finding.

We next consider whether, given his concerns about impropriety, the judge acted properly in continuing to sit on the case for two more months and by issuing important orders. We think not. The judge announced that Mellon's interests will likely conflict with those of the Pension Benefit Guaranty Corporation and the former hourly employees. However, contrary to the judge's contention, there was a potential for that conflict to arise in the judge's consideration of the motion for conversion. Mellon Bank could possibly benefit from continuing efforts at chapter 11 reorganization, which could create more money for the unsecured creditors. On the other hand, because the employees and the PBGC have higher priority for their claims, *see* 11 U.S.C. § 507(a), they are less disadvantaged by the failure to reorganize. Since they also have an interest in getting their money quickly, they may benefit from a chapter 7 action. Thus, we respect the judge's opinion that he could not continue to sit on the case, but we disagree with him that the conflicts that he feared could only arise after the conversion motion was settled.

Similarly, the problems with his continuing involvement with the case, given the fact that some of the lawyers before him were also defending a suit to which he was a party, were equally valid before as well as after the entering of the conversion order. To the extent that the judge determined that they mandated recusal after the order, they must also mandate recusal before. Thus, if the judge should have recused (and we defer to his judgment that he should), he should have recused at the January 29 hearing.

■ Once a judge has disqualified himself, he or she may enter no further orders in the case. *Arnold v. Eastern Airlines,*

*Inc.,* 712 F.2d 899 (4th Cir.1983); *Stringer v. United States,* 223 F.2d 947 (9th Cir. 1956). His power is limited to performing ministerial duties necessary to transfer the case to another judge (including the entering of "housekeeping" orders). *In re Cement Antitrust Litigation,* 673 F.2d 1020, 1024–25 (9th Cir.1982); *Application of Scott,* 379 F.Supp. 622, 624 (S.D.Tx.1974). Thus, the only other relevant inquiry is whether the orders entered here can be characterized as "housekeeping." We conclude that orders converting a Chapter 11 bankruptcy proceeding to Chapter 7, disqualifying counsel or vacating a contingent fee agreement, and findings impugning counsel are too substantial to be considered mere "housekeeping."

■ Mandamus lies "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). And "[i]n order to insure that the writ will issue only in extraordinary circumstances[,] ... a party seeking issuance [must] have no other adequate means to attain the relief he desires." *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 35, 101 S.Ct. 188, 189–90, 190, 66 L.Ed.2d 193 (1980). Courts allow mandamus when a district court had made a clear error of law. *See Schlagenhauf v. Holder,* 379 U.S. 104, 112, 85 S.Ct. 234, 239–40, 13 L.Ed.2d 152 (1964); *Cipollone v. Liggett, Inc.,* 785 F.2d 1108, 1118 (3d Cir. 1986 (citing *Sporck v. Peil,* 759 F.2d 312, 314 (3d Cir.1985)). This case satisfies these standards. A judge who was obliged to recuse acts outside his jurisdiction. At the very least, he commits a clear error of law. Moreover, where important facets of his rulings are not challenged on their own merit (as is the case here) or where those facets are not appealable (as is also the case here) there is no alternative remedy. Mandamus is thus the proper remedy to vacate the orders of a judge who acted when he should have recused. *New York City Housing Development Corp. v. Wil-*

*liam T. Hart,* 796 F.2d 976, 979 (7th Cir. 1986).

Because the judge should have recused after finding that his impartiality could reasonably be questioned, we will grant the writ of mandamus to vacate all orders (including opinions) entered by the judge after January 29, 1988. More specifically, we will issue a writ of mandamus directing the respondent, Honorable Paul A. Simmons:

> to vacate all orders and findings entered since January 29, 1988 in the proceedings pending before the Respondent at Civil Action No. 83–2383 and in Bankruptcy No. 82–3265; [9]

In view of our issuance of the writ we need not address the interesting question whether mandamus will lie to vacate findings solely because they are clearly unsubstantiated.[10] In an excess of caution, however, we have examined the record and note that we can find no justification for the district judge's disparaging statements about the petitioners, which he repeats in his papers presented to this Court.

It is with discomfiture that we enter this order as it sets the case back several months. However, the motion to convert is uncontested and we presume the new judge assigned to the case will be able to act with speed. The writ shall issue forthwith.[11]

---

**9.** The orders of principal significance are:
  1. The conversion from Chapter 11 to Chapter 7.
  2. A determination that the Committee of Unsecured Creditors has no standing to sue in the "fraudulent conveyance litigation" and that the Committee is therefore removed as a plaintiff in that case.
  3. That the 33% contingent fee order entered by the Bankruptcy Court on July 28, 1983 should be vacated *ab initio.*
  4. Recommendation that the lawyers for the unsecured creditors in the fraudulent conveyance litigation should continue to serve as lawyers after the conversion to Chapter 7, with provisions regarding the lawyers' compensation.
  5. Various accounting orders.

**10.** Petitioners also submit that the orders disqualifying counsel and setting aside the contingent fee agreement which had been approved by the bankruptcy court must be vacated because there has never been a hearing with respect to those orders, which were entered *sua sponte,* and because they are wholly unsupported by any record. They argue that orders entered without a hearing are wholly offensive to basic notions of due process and the appropriate remedy to vacate such an order is mandamus, citing *Swindell–Dressler Corp. v. Dumbauld,* 308 F.2d 267, 273 (3d Cir.1962). In view of our disposition we need not reach this question. Neither must we resolve the dispute as to whether what the judge conducted in his courtroom on March 16 was a press conference. However, we observe that, if the petitioners' version of the March 16 proceeding is accurate, the proceedings were highly inappropriate.

**11.** In light of the animosity that appears to have arisen between the district judge and the two petitioning law firms, the district judge may wish to consider not sitting on cases involving these firms in the future.