**James J. HAND, Jr., Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 30984**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

April 9, 1971.

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

**530**

Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Joseph M. Howard, Joseph H. Reiter, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant; Gerald J. Gallinghouse, U. S. Atty., of counsel.

Guy Johnson, New Orleans, La., for plaintiff-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

PER CURIAM:

The United States appeals from an order of the district court granting the motion of James J. Hand, Jr., for a new trial under Rule 60(b) (6), F.R.Civ.P.[1] We affirm.

On September 12, 1961, Government agents raided Hand's place of business, a restaurant and bar in New Orleans known as the Austin Inn. On the basis of the gambling records seized in the raid, the Commissioner of Internal Revenue assessed Hand $450,311.69 as due and owing in taxes, interest, and penalties for the period from February 1957 through September 12, 1961.[2] Hand paid $1,632.20 of the assessment and initiated this action for a refund. The United States counterclaimed for the balance of the assessment.

At the trial Hand testified that he had never accepted any wagers during the period in question. On the other hand, two cooks and an undercover agent testified that at various times they had observed Hand accept wagers. Moreover, the Government introduced into evidence Hand's plea of guilty to a 1963 charge of failing to pay the federal gambling tax for the period from July 25, 1961, through September 12, 1961. In addition, the Government attempted to introduce the gambling records seized in the September 12, 1961, raid; however, the court ruled that those records were inadmissible because they were the fruits of an illegal search and seizure.

In response to special interrogatories the jury concluded that Hand had in fact been in the business of accepting wagers, that the amount of wagers accepted *per day* during the period from February 1957 to June 1959 was $800,

---

1. Ordinarily an order granting a motion under Rule 60 for relief from a final judgment is purely interlocutory and not appealable. 3 W. Barron & A. Holtzoff, Federal Practice & Procedure § 1332 (C. Wright ed. 1958). Nevertheless, when the appellant attacks the jurisdiction of the district court to vacate the judgment and grant a new trial, an appeal will lie to review the power of the court to enter such an order. *E. g.*, Tsai v. Rosenthal, 8 Cir. 1961, 297 F.2d 614, 616.

2. Following the decisions of the Supreme Court in Marchetti v. United States, 1968, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed. 2d 889, and Grosso v. United States, 1968, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, but before the trial of this case, the Commissioner abated the penalties.

and that the *total* amount of wagers accepted during the period from July 25, 1961, through September 12, 1961, was $1,141.[3] In accordance with the jury's verdict, the court on January 5, 1970, entered judgment for the United States on its counterclaim in the amount of $77,348.12. The disparity in the amounts strongly implies that the jury was confused and brought in answers to interrogatories for which there is no rational explanation.[4]

On January 9, 1970, Hand filed an alternative motion for judgment notwithstanding the jury verdict or a new trial. The court denied the motion on May 12, 1970. On June 11, 1970, Hand filed a motion under Rule 60(b), F.R. Civ.P., for relief from the final judgment entered on January 5, 1970. The court granted the motion on the ground that "the ends of justice would best be served by granting plaintiff a new trial", citing Pizzarello v. United States, 2 Cir. 1969, 408 F.2d 579. The United States has appealed.

Rule 60(b) allows the district court, "on motion and upon such terms as are just," to relieve a party from the effects of a final judgment for any of a number of reasons. Among those reasons are mistake, surprise, excusable neglect, newly discovered evidence, fraud, release, and satisfaction. Subdivision (b) (6) adds the catch-all phrase "or any other reason justifying relief from the operation of the judgment." The only express limitation on motions under Rule 60(b) (6) is that they must be made "within a reasonable time."

■■ Motions for relief from a final judgment are addressed to the sound discretion of the district court, guided of course by accepted legal principles. Therefore, in the absence of an abuse of discretion we do not review the district court's determination. *See, e. g.,* SEC v. Farm & Home Agency, Inc., 7 Cir. 1959, 270 F.2d 891, 892; 3 W. Barron & A. Holtzoff, Federal Practice & Procedure § 1323 (C. Wright ed. 1958). In the circumstances of this case—the jury's apparently inconsistent answers to interrogatories, the Government's possibly improper use of illegally seized evidence, and the lack of other evidence to support the Commissioner's assessment—we cannot say that the district court abused its discretion by granting Hand a new trial. Moreover, since Hand filed his motion well within the prescribed "reasonable time," the court did not lack jurisdiction to exercise its discretion.

Therefore, the judgment of the district court is affirmed.

3. The jury received from the Court the following Interrogatories:
   "What is the total amount of gross wagers per day accepted by the plaintiff-taxpayer, James J. Hand, Jr., for the period February 1957 to June 1959?
   What is the total amount of gross wagers accepted by the plaintiff-taxpayer James J. Hand, Jr., for the period of time July 25, 1961, to September 12, 1961?"

4. The verdict reduced to daily gross income is as follows:

   "$800.00 'PER DAY' was the amount of horse race wagers the jury found HAND to be handling for 415 days from February 1957 to June 1959.
   $25.00, or less, was the amount of wagers 'PER DAY' HAND was supposed to have handled for the 49 day period from July 25, 1961, to September 12, 1961."
   32 to 1 is the ratio of the differential between the wagers handled in 1957–59 and the wagers in July-September 1961. The record does not show a bustling operation in 1957–59 as compared with the meager business in the 49 days of 1961.