J. A15011/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN RE:  ESTATE OF                  :        IN THE SUPERIOR COURT OF
FRANKLIN A. HAWK                   :              PENNSYLVANIA
                                   :
APPEAL OF:  CAROL CALLANAN,        :          No. 1954 EDA 2015
CO-EXECUTRIX, A CLAIMANT AND       :
A RESPONDENT                       :


Appeal from the Order Dated May 22, 2015,
in the Court of Common Pleas of Northhampton County
Orphans' Court Division at No. 2012-0392


BEFORE:  FORD ELLIOTT, P.J.E., DUBOW AND JENKINS, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED DECEMBER 09, 2016**

Carol Callanan appeals the order of the Court of Common Pleas of
Northhampton County that denied appellant's exceptions from the trial
court's order that granted in part and denied in part appellant's claims
against the Estate of Franklin A. Hawk ("Estate").

Franklin A. Hawk ("decedent"), whose wife, Patricia A. Hawk,
predeceased him, died intestate on February 28, 2012.  His two daughters,
Annette M. Harka ("Harka") and appellant, were the only survivors.  On
March 22, 2012, Letters of Administration were issued to Harka and
appellant.  Appellant lived in decedent's home, located at 2074 Fourth
Street, Bethlehem, Pennsylvania ("Property"), from 2008 until March 5,
2014, when the Property was sold.

On June 14, 2013, Harka filed a petition to compel action and payment by co-administrator. In the petition, Harka sought to compel the sale of the Property, to receive payment for the fair rental value of the Property plus interest, and to direct payment to Harka in an amount equal to the value of any damage for waste committed on the Property, plus interest.

By order dated August 2, 2013, the trial court granted the motion in part and directed that appellant and Harka hire a realtor to facilitate the sale of the Property. In the event that appellant and Harka could not agree on a realtor, the trial court would appoint one. The remaining claims in the petition were held in abeyance. Appellant and Harka could not reach an agreement, and the trial court appointed David A. Lichtenwalner ("Lichtenwalner") of Prudential Choice Properties by order dated September 10, 2013. The trial court directed Lichtenwalner to arrive at a listing price for sale and to also advise the trial court and the parties of the fair rental value of the property. In a letter report dated September 26, 2013, Lichtenwalner determined the fair market value of the property as $75,000, the listing price for sale as $80,000, and the fair rental value of the property as $800 per month.

In December 2013, the Estate received an offer on the Property in the amount of $95,000 with $5,000 earnest money, no mortgage, and no inspections. In order to bring the matter to a prompt conclusion, Harka petitioned to cooperate with sale and fix the fair rental value. By order of

court dated January 17, 2014, the trial court ordered Harka and appellant to cooperate and sign all documents related to the sale of the Property. Appellant was ordered to vacate the property seven days prior to closing. The parties were further ordered to cooperate with one another to remove all items of personal property from the Property and prepare the Property for closing.

On March 5, 2014, the closing was held. The net proceeds of the sale which originally totaled $84,779.49 plus a subsequent deposit of $1,852.35 was made, bringing the total amount in escrow to $86,631.84.

Harka petitioned to compel action and payment by co-administrator and brought claims for fair rental value and waste against appellant on the basis that appellant lived at the Property from 2008 through the closing. The trial court conducted a hearing on the petition on May 13, 2014.

Prior to trial, appellant moved for the trial court judge to recuse himself on the basis that the trial court judge allegedly engaged in *ex parte* communications with Lichtenwalner. The trial court judge and Lichtenwalner knew each other and occasionally encountered each other in the community. On November 2, 2013, the trial court judge and Lichtenwalner had such an encounter. At that time, Lichtenwalner informed the trial court that he had contacted counsel for both parties but had not heard back from appellant's counsel, Ronald L. Clever, Esq. ("Attorney Clever"). On November 5, 2013, the trial court's law clerk telephoned Lichtenwalner and left a voice mail

message in which he inquired as to whether Lichtenwalner required the assistance of the trial court to contact Attorney Clever. On November 6, 2013, Lichtenwalner returned the telephone call and informed the trial court that he had heard from Attorney Clever and did not need any help from the trial court.

On December 3, 2013, the trial court received a telephone call from Lichtenwalner in which Lichtenwalner informed the trial court that he had been unable to obtain contact information for appellant from Attorney Clever who provided his own contact information rather than appellant's. The trial court then wrote a letter to Attorney Clever and relayed the substance of Lichtenwalner's letter to Attorney Clever that Attorney Clever purportedly provided appellant's contact information but it was actually Attorney Clever's and requested that Attorney Clever give the requested information to Lichtenwalner by a certain date. In response, Attorney Clever wrote a letter to the trial court and accused the trial court of one-to-one communication with Lichtenwalner and Harka's counsel. At the May 13, 2014 hearing, Attorney Clever moved for recusal which the trial court denied.

By order dated June 3, 2014, the trial court denied the claim for waste but granted Harka's claim for fair rental value and ordered that $9,810.88 be subtracted from appellant's share of the Estate. The trial court found that appellant lived at the Property from February 28, 2012 through March 5,

2014, for a total of 736 days at a rate of $13.33 per day which represented half of the fair rental value of $26.66 per day or $800 per month.

Appellant filed exceptions to the June 4, 2014 order. The trial court denied the exceptions on September 3, 2014. The trial court directed the parties to prepare an accounting and a schedule of distribution. Harka filed a first and final accounting with the trial court which was listed on the Audit List of September 26, 2014. On September 26, 2014, appellant appealed the September 3, 2014 order that denied the exceptions to this court. On August 18, 2015, this court quashed the appeal because we lacked jurisdiction as appellant did not appeal a final order. *In Re: Estate of Franklin A. Hawk*, No. 2858 EDA 2014, unpublished memorandum (Pa.Super. filed August 18, 2015).

On September 26, 2014, appellant filed a claim and objections to the accounting. In her claim, appellant sought reimbursement for expenses she paid on behalf of the Estate when she was living at the Property in the amount of $5,653.44. Appellant also asserted a claim for the fair rental value of the Property against the Estate in the amount of $14,716.32 for the storage of the Estate's personal property on the Property. The trial court conducted a non-jury trial on the claims on December 17, 2014. Specifically, appellant sought reimbursement for the alleged payment of real estate taxes for the Property in 2013 in the amount of $3,054.38. The trial court denied the claim on the basis that a tenant in common who pays more

than his or her proportionate share of the tax obligations is not entitled to contributions from co-tenants for the excess tax payment. (Trial court opinion, 2/6/15 at 5-6.)

Appellant also sought reimbursement for the payment of the 2013 homeowner's insurance, a sewer bill in 2013, and a 2012 electric bill for a total of $799.06. The trial court determined that appellant did pay for these bills and was entitled to reimbursement for one-half of the expenses so that the Estate owed her $399.53. (Trial court opinion, 2/6/15 at 6-7.)

In addition, appellant sought reimbursement from the Estate for the values of a stove, washer, and dryer that she bought when she resided at the Property but were sold when the Property was sold. The trial court denied this claim because appellant could not provide evidence as to the value of these items at the time of sale. (*Id.* at 7-8.)

Appellant also sought reimbursement for the Estate storing personal property which had belonged to appellant's parents at the Property from the time of decedent's death until the Property was sold. Appellant asserted that because the Estate's tangible assets occupied approximately 80% of the space inside the house on the Property, the Estate should be responsible for $14,716.32 which was 75% of the fair rental value of $800 per month. The trial court denied her claim in its opinion and order dated February 6, 2015.

Appellant filed exceptions to the February 6, 2015 order, which the trial court denied in an opinion and order dated May 22, 2015.

Appellant raises the following issues for this court's review:

A. Is there any legal basis – either under Title 20 or under Title 68 – for [Harka's] original monetary request?

B. If there is some legal basis for [Harka's] original request, did [Harka] meet the legal standards for awarding a sum of money from one heir to the other heir?

C. Should the Judge have recused himself?

D. Because the decision . . . requires the appellant to pay the Estate for the entire fair rental value for the entire house, is the Estate then liable, to her for storing its goods there?

E. Because the decision . . . requires the appellant to pay the Estate for the entire fair rental value for the entire house, is the Estate then liable, to her, to reimburse her for real estate taxes that she paid separately?

Appellant's brief at 5.

Initially, appellant contends that there is no statutory authority for permitting the Estate to deduct from her share of the Estate one-half the fair rental value of the Property from the decedent's death until the time of sale.

This court's review of a decision of an Orphans' Court is as follows:

Our standard of review of the findings of an [O]rphans' [C]ourt is deferential.

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we

> will not reverse its credibility determinations absent an abuse of that discretion.
>
> However, we are not constrained to give the same deference to any resulting legal conclusions.
>
> *In re Estate of Harrison*, 745 A.2d 676, 678-679, *appeal denied*, 758 A.2d 1200 (Pa. 2000). (internal citations and quotation marks omitted). "[T]he Orphans' [C]ourt decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Luongo*, 823 A.2d 942, 951 (Pa.Super. 2003), *appeal denied*, 847 A.2d 1287 (Pa. 2003).

*In re Estate of Whitley*, 50 A.3d 203, 206-207 (Pa.Super. 2012) (internal

citations and quotation marks omitted).

Section 3311(a) of the Probate, Estates, and Fiduciaries Code,

20 Pa.C.S.A. § 3311(a), applies to this case and provides as follows:

> **§ 3311.  Possession of real and personal estate; exception**
>
> **(a) Personal representative.**--A personal representative shall have the right to and shall take possession of, maintain and administer all the real and personal estate of the decedent, except real estate occupied at the time of death by an heir or devisee with the consent of the decedent.  He shall collect the rents and income from each asset in his possession until it is sold or distributed, and, during the administration of the estate, shall have the right to maintain any action with respect to it and shall make all reasonable expenditures necessary to preserve it.  The court may direct the personal representative to take possession of, administer and maintain real estate so occupied by an heir or a devisee if this is necessary to protect the rights of claimants or

> other parties. Nothing in this section shall affect the personal representative's power to sell real estate occupied by an heir or devisee.

20 Pa.C.S.A. § 3311(a).

The comment to Section 3311 states that it is not contemplated that rents shall be collected by the personal representative from real estate occupied by an heir or devisee unless needed for the payment of claims.

In **In re Padezanin**, 937 A.2d 475 (Pa.Super. 2007), this court addressed the question of whether an heir is liable for rent to an estate if the heir continues to live on property owned by the estate. Two of the heirs resided at real property owned by the Estate of Daniel Padezanin, deceased. The Orphans' Court Division of the Court of Common Pleas of Beaver County assessed Debra A. Florida ("Florida") $22,064.73 in rent and Danielle P. Sweesy ("Sweesy") $29,340. Florida resided on real property owned by the decedent at the time of the decedent's death. She continued to reside there until she moved to another property owned by the estate. They appealed to this court and argued that Section 3311(a) of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §3311(a), precluded the assessment of rent. *Id.* at 479, 481-482.

This court determined that Sweesy was not eligible for relief because she was not residing on real estate owned by the decedent at the time of his death. With respect to Florida, the court determined that she was living on real property owned by the decedent at the time of his death and could not

be assessed rent for the time she resided there unless the estate was insolvent, which it was not. Florida could be assessed rent for the time she lived at the second property owned by the estate because she was not living there at the time of the decedent's death. *Id.* at 482-483.

More recently, in *In re: Estate of Bouks*, 964 A.2d 4 (Pa.Super. 2008), this court again addressed the same issue. Tamara Bouks owned the property where she lived. Her son, Oleg Bouks ("Bouks"), lived with her at the property. Tamara Bouks died on November 25, 2001. Bouks was a co-executor and co-beneficiary of his mother's estate with his sister, Ariadna Dittess Mergelkamp ("Mergelkamp"). He continued to live at the residence where he had lived when his mother was alive. Bouks expressed an interest in purchasing the property, which ultimately occurred four years later. Bouks initially sought to purchase the property at the assessed value $67,900 which was used for inheritance tax purposes. Mergelkamp rejected the offer. Each co-executor obtained an appraisal for the property with one at $110,000 and the other at $140,000. On October 21, 2003, two years after his mother's death, Bouks petitioned the orphans' court and sought to purchase the property at the assessed value. This request was denied. Bouks was ordered to file an accounting and to place the property for sale. When Bouks failed to do so, Mergelkamp filed a contempt petition. When faced with the contempt petition, Bouks purchased the home for $176,000. Bouks filed an account. Mergelkamp objected and argued that Bouks should

have to pay rent to the estate for the time he occupied the estate's property. The Orphans' Court Division of the Court of Common Pleas of Philadelphia County agreed and awarded the estate rental payments from Bouks that commenced six months after his mother's death. *Id.* at 5.

This court agreed and distinguished ***Padezanin*** on the basis that Bouks did not vacate the real estate in a timely manner and engaged in conduct that delayed the proper administration of the estate. This court concluded:

> Thus, we affirm the orphans' court's conclusion that when the occupancy of the decedent's real estate by an estate's beneficiary is unnecessarily prolonged due solely to the improper behavior of the beneficiary occupying the real estate, 20 Pa.C.S.[A.] § 3311, will not be construed to prevent an award of rental following a reasonable period. A contrary construction of that enactment would encourage beneficiaries to delay settling an estate in order to take advantage of dwelling on estate property rent-free. In light of legal precepts that require the prudent administration of an estate and timely distribution of estate assets, the legislature did not intend section 3311 to prevent an award of rental under circumstances present herein.

***Bouks***, 964 A.2d at 7.

What seems clear from this court's recent case law is that a beneficiary can be held to pay a fair rental value under Section 3311 if the possession is prolonged and/or causes undue delay and prejudice in the administration of the estate.

Here, appellant lived on the Property from the time of her father's death until the property was sold. A review of the record reveals that while Harka alleged that appellant had resided on the Property since their father's death, there was no allegation in the petition that appellant delayed the sale of the Property for her own benefit nor did the trial court find her liable for any waste to the Property. In the hearing before the trial court, there similarly was no such allegation except that each sister took steps to prevent the sale of the Property to the other. The trial court resolved this controversy based on a partition action of the property with the two sisters as tenants in common. The trial court did not follow or even distinguish Section 3311 of the Probate, Estates and Fiduciaries Code or the relevant case law. Based on *Padezanin* and *Bouks*, Harka failed to establish that appellant was required to pay rent for the time she remained on the Estate's Property. Accordingly, the trial court erred when it awarded the Estate $9,810.88 from appellant's share of it.

Appellant next contends that the trial court should have recused itself because the trial court had *ex parte* communications with Lichtenwalner in part concerning whether Attorney Clever had provided Lichtenwalner with a phone number that he represented was appellant's when in fact it was Attorney Clever's.

> We review a trial court's decision to deny a motion to recuse for an abuse of discretion. *Vargo v. Schwartz*, 940 A.2d 459, 471 (Pa.Super. 2007). Indeed our review of a trial court's denial of a motion

> to recuse is exceptionally deferential. ***Id.*** . . . . [A] trial judge should grant a motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned. ***In re Bridgeport Fire Litigation***, 5 A.3d 1250, 1254 (Pa.Super. 2010).
>
> In order to prevail . . . [a] party seeking recusal must satisfy the burden "to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." ***In re S.H.***, 879 A.2d 802, 808 (Pa.Super. 2005) (quoting ***Arnold v. Arnold***, 847 A.2d 674, 680-681 (Pa.Super. 2004)).

***In the Interest of A.D.***, 93 A.3d 888, 892 (Pa.Super. 2014).

Here, the chance encounter between the court-appointed Lichtenwalner and the further correspondence between the court and Lichtenwalner does not establish any sort of bias or the appearance of impartiality. Although the trial court used the word "purported" in its letter to Attorney Clever concerning whether Attorney Clever had provided his phone number to Lichtenwalner instead of appellant's, this word did not necessarily imply that the trial court thought that Attorney Clever was lying to Lichtenwalner. Further, appellant argues that the trial court should not have accused Attorney Clever of padding his fees and should not have called him "arrogant." These comments do not create the appearance of impropriety either.[1] During the course of a trial or hearing, there may be

---

[1] Appellant also raises the issues that the Estate should be liable to her for storing its goods on the property and that the Estate should reimburse her for real estate taxes for the property that she personally paid. However, she asserts that had the issue of the rental payment been decided in her favor,

- 13 -

criticism from the bench which does not mean that the trial court is biased against a party or disposed to rule against that party. This court determines that the trial court did not commit an abuse of discretion when it denied the motion to recuse.

Order reversed as to the payment of rent and affirmed as to the denial of the motion to recuse.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/2016

---

these issues would not exist. Because this court has decided the rental issue in her favor, this court need not address these arguments. Appellant also contends that even if there were some legal basis for the assessment of rent Harka did not meet the legal standard for awarding a sum of money from heir to another. Because this court has determined that the trial court erred when it awarded the rental, this court need not address this issue.